IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JH

WILLIAM O. ATKINS, et al.,          )
                                     )
            Plaintiff,               )
                                     )
      v.                             )   No. 05 C 6109
                                     )
CITY OF CHICAGO (CHICAGO POLICE      )
DEPARTMENT), et al.,                 )
                                     )
            Defendants.              )

MEMORANDUM OPINION AND ORDER

William Atkins ("Atkins") has sued Illinois Department of Corrections ("Department") Director Roger Walker ("Walker"), Warden Dierdre Battaglia ("Battaglia"), Lieutenant Samuel Nance ("Nance"), Officer Jerald Reese ("Reese") and Counselor Andrea Pickard ("Pickard") (collectively "State Officials") under 42 U.S.C. §1983 ("Section 1983"), charging them with having violated his constitutional rights by his wrongful month-long detention at Stateville Correctional Center. In response, State Officials have coupled their Answer to the First Amended Complaint ("FAC") with an affirmative defense of qualified immunity.

Atkins has now moved to strike one aspect of that defense,[1] and the parties have briefed the motion fully.[2] For the reasons

---

[1] Atkins' FAC also advances a claim against State Officials for imposing assertedly unconstitutional conditions of confinement, but Atkins' Motion To Strike addresses the qualified immunity issue only as to Atkins' claim of wrongful detention. This opinion therefore does the same.

[2] State Officials' Memorandum is cited "S. Mem."

stated in this memorandum opinion and order, Atkins' motion to strike is granted as to Battaglia, Nance, Reese and Pickard but is denied as to Walker.

## Standard of Review

Fed. R. Civ. P. ("Rule") 12(f), labeled "Motion to Strike," provides a vehicle for challenging a defendant's affirmative defenses (Bobbitt v. Victorian House, Inc., 532 F. Supp. 734, 736 (N.D. Ill. 1982)). To do so successfully, a plaintiff must show that the defense is insufficient on the face of the pleadings (Heller Fin., Inc. v. Midwhey Power Co., 883 F.2d 1286, 1294 (7th Cir. 1989)). As Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991)(internal quotation marks and citations omitted) states, a motion to strike "will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings."

## Background[3]

On October 27, 2003[4] Chicago police officers searched and handcuffed Atkins and his brother Adam after a traffic stop (FAC

---

[3] This background statement is culled from the FAC's factual allegations, which will be treated as true for the purpose of this motion. Even though those allegations may ultimately prove to be unsupportable, a proper affirmative defense either expressly or impliedly treats them as true but offers some other reason why liability should not attach (see Bobbitt, 532 F. Supp. at 736).

[4] Because all events mentioned here took place in 2003, this opinion will hereafter omit any year references.

¶¶5, 6, 11). When an officer "inserted the information from the driver's license of William Atkins into the computer of the Chicago police car," the officer "determined he was the wanted William Atkins on a homicide and/or sexual offense warrant" (id. ¶¶2, 12).[5]

At the time of Atkins' arrest, either or both of Atkins and his brother Adam protested that the "computer screen demonstrated that the wanted person had a different height, different weight, different driver's license information, except for the name, different date of birth and different Social Security number from [Atkins]" (FAC ¶13). Those protests continued throughout the booking process, but to no avail (id. ¶¶15, 18). Later that day Atkins was taken to the Chicago Police Department's jail at 18th and State Streets, where he spent the night (id. ¶¶17, 22).

At some point after October 27, Atkins was transferred into Department's custody. There he "remained jailed for 37 days" until Department "determined that they had in custody from the Chicago Police Department the wrong William Atkins" (FAC ¶¶3-4). While in Department's custody, Atkins adamantly protested to

---

    [5] There is a question as to the type of warrant on which Atkins was arrested. According to State Officials, Atkins was arrested pursuant to a parole violation warrant (S. Mem. 2). Although the FAC speaks instead of an "arrest warrant," (FAC ¶¶24, 36, 47, 61) State Officials' version is given credence by some FAC references to Atkins' desire to appear before the parole board while in Department's custody (id. ¶¶42, 45). But as will be discussed later, crediting State Officials' position that Atkins was arrested on a parole violation warrant does not alter the outcome of the case.

3

numerous officers, including Battaglia, Nance, Reese and Pickard (id. ¶41), that he had been misidentified. But in spite of those ongoing protests, no Department employee or agent ever checked whether Atkins' fingerprints, Social Security number, physical description, address or inmate record number matched that of the wanted William Atkins (id. ¶50). Instead "unknown officers" simply told Atkins to "shut up, causing the plaintiff to become fearful" (id. ¶¶57, 65). Moreover, Battaglia, Nance, Reese and Pickard refused Atkins' request to appear before the parole board to clarify his misidentification (id. ¶45). Nor was Atkins ever taken before a court to address the issue (id. ¶47).

## Qualified Immunity

State officials enjoy qualified immunity and "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). There is a two-step test for an official's entitlement to qualified immunity (Miller v. Jones, 444 F.3d 929, 934 (7th Cir. 2006) (citations and internal quotation marks omitted)):

> First, taken in a light most favorable to the party asserting the injury, the facts must show the official violated a constitutional right. Second, we look to see if the right was clearly established at the time of the alleged violation.

Atkins claims that State Officials violated his due process

rights by detaining him for 37 days, without any effort at verifying his identify, despite his repeated protests that he was not the wanted William Atkins. Because Atkins nowhere contests the validity of the warrant as to the <u>right</u> William Atkins (a claim that would implicate Fourth Amendment concerns), his challenge to that continued detention is governed by the Due Process Clause (see <u>Patton v. Przybylksi</u>, 822 F.2d 697, 700-01 (7th Cir. 1987)).

On that score <u>Baker v. McCollan</u>, 443 U.S. 137 (1979) is the seminal case. In <u>Baker</u> an arrest warrant intended for plaintiff Linnie McCollan's brother Leonard was issued in Linnie's name because Leonard had committed narcotics offenses while masquerading as Linnie (<u>id</u>. at 140-41). Despite protesting that he was not the person sought by the police, Linnie was arrested and detained for three days over the New Years holiday (<u>id</u>. at 141).[6] He was released only after county officials compared his appearance to photographs of the wanted "Linnie McCollan" (<u>id</u>).

Because Linnie had been arrested pursuant to a facially valid warrant and detained for only three days, <u>Baker</u> found that there was no due process violation. But in so holding <u>Baker</u> expressly noted that there was a limit to the mistaken detention of an individual even where the police initially had probable

---

[6] Linnie's detention was actually for a total of eight days, but five of those days were spent in another county whose officials were not defendants (<u>Baker</u>, <u>id</u>.).

5

cause to hold that individual (id. at 144-45):

> Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment....We may even assume, arguendo, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty...without due process of law."

Caselaw following in Baker's wake has picked up where Baker's dictum left off, with a number of courts (see, e.g., Patton, 822 F.2d at 700-01) determining that, as Judge Cudahy said in his partial concurrence and partial dissent in Garcia v. City of Chicago, 24 F.3d 966, 973 (7th Cir. 1994), "prolonged pre-trial detention without any investigation can constitute a deprivation of liberty without due process." In reaching that conclusion the courts have honed in on two factors: (1) the length of the wrongful detention and (2) the burden on government officials to provide procedural safeguards to verify that they have detained the correct person (see Coleman v. Frantz, 754 F.2d 719, 724 (7th Cir. 1985)). Implicit in the second factor is an evaluation of the state of mind of the officers involved (see, e.g., Johnson v. City of Chicago, 711 F. Supp. 1465, 1470 (N.D. Ill. 1989)).[7]

---

[7] Such a state-of-mind analysis is also relevant for Section 1983 purposes, although as Baker, 443 U.S. at 140 n.1 explained:

As to the length of detention, our Court of Appeals has said that a detention of even six days suffices to bring the Due Process Clause into play (Patton, 822 F.2d at 698, 700-01). And although there is no precise standard for evaluating the burden of verification, courts have regularly found that it is a relatively small imposition to require officers (1) to provide for timely first appearances where first appearances are required under the law (see Coleman, 754 F.2d at 724) and (2) to check the fingerprints, compare the photographs or measure the similarity or dissimilarity between personal data of the detained and wanted persons (see, e.g., Cannon v. Macon County, 1 F.3d 1558, 1563-64 (11th Cir. 1993); Johnson, 711 F. Supp. at 1470).

Measured against such a well-established constitutional yardstick, Atkins' allegations plainly suffice to make out a constitutional violation. Atkins was detained for 37 days over his repeated protests that he was not the wanted William Atkins. Those constantly reasserted claims of misidentification were never investigated. Given the FAC's allegations that Atkins' date of birth, physical appearance and Social Security number differed from that of the wanted suspect and that Department had ready access to both parties' fingerprints, it would have been

---

Of course, the state of mind of the defendant may be relevant on the issue of whether a constitutional violation has occurred in the first place, quite apart from the issue of whether §1983 contains some additional qualification of that nature before a defendant may be held to respond in damages under its provisions.

easy for State Officials to confirm that Atkins was not the man named in the warrant (see, e.g., Johnson, 711 F. Supp. at 1470). That nonfeasance certainly rises at least to the level of deliberate indifference required to stake out a due process claim.

State Officials' attempts to urge otherwise are wholly without merit. In part they may be given short shrift, while the nature of other aspects involves some more elaboration but still leads to the identical conclusion.

First, State Officials try to argue that Baker is not only precedential but also controls the outcome of this case. It is frankly absurd thus to equate a three-day detention with Atkins' protracted 37-day ordeal, given both the Baker dictum and the judicial adherence to that dictum in later decisions.

Second, State Officials argue that they cannot be held personally liable for Atkins' wrongful detention because only the State may violate due process rights if fails to verify the identity of a prisoner. But State Officials cannot seek solace in the fact that they are being sued in their individual as opposed to official capacity. Hafer v. Melo, 502 U.S. 20, 27-28 (1991) teaches that state officers sued in their personal capacity can be held liable under Section 1983 precisely because their actions are taken under the badge of State authority and are necessary to the performance of government functions.

Analogous wrongful detention cases have therefore had no trouble in pinning personal liability on individual officers (see, e.g., Cannon, 1 F.3d at 1561, 1564-65).

Third, State Officials contend that the string of cases that have followed Baker's lead are inapropos because Atkins was picked up on a parole violation warrant rather than an arrest warrant (S. Mem. 12-13). To be sure, Baker and the majority of its progeny have involved arrest warrants, but analysis readily shows that the nature of the warrant on which Atkins was taken into custody is of no moment.

True enough, parolees are provided different due process rights than are criminal suspects (see Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). But application of that distinction makes sense only once it is established that the person being detained is in fact the person as to whom the authorities have established probable cause to arrest. Otherwise an innocent person's right to vindicate his or her own liberty interest would be entirely arbitrary: It would hinge not at all on the innocent person's conduct, but rather on the nature of the violation that the person for whom he or she was mistaken had committed.[8] Just to

---

[8] For example, suppose that the wanted William Atkins was not a parole violator but had instead escaped prison five years before he completed his sentence. Now the wrong Atkins is mistakenly arrested. If the only procedure given to an escapee were a release after his sentence has been served, it cannot be that State Officials would have no obligation to verify that the arrested Atkins was in fact the wanted William Atkins simply because the scheme for escapees grants them only limited rights.

state that concept demonstrates its emptiness.

It is unsurprising, then, that the wrongful detention cases arising outside of the criminal arrest context have not focused on the distinction between the procedures afforded to an arrested criminal suspect and those afforded to an individual detained for other reasons, such as for extradition on a parole violation (see, e.g., Gray v. Cuyahoga County Sheriff's Dep't, 150 F.3d 579, 580, 582 (6th Cir. 1998), amended as to another portion of the opinion at 160 F.3d 276 (6th Cir. 1998)).[9] And State Officials have offered no principled reason for adopting a different approach that does so now. Hence, even taking all of the inferences in State Officials' favor and assuming that Atkins was taken into custody on a parole violation warrant, Atkins has still alleged a violation of his due process rights.

Once a constitutional violation is found, the immunity inquiry turns to whether that violation was clearly established at the time of the alleged conduct. To that end Anderson v. Creighton, 483 U.S. 635, 640 (1987)(citations omitted) states the test:

---

[9] Judge Cudahy's concurring-dissenting opinion in Garcia, 24 F.3d at 975-76 rejects any possible contention that an individual's probationer status could impact his challenge to extended pre-trial detention. And Armstrong v. Squadrito, 152 F.3d 564, 581-82 (7th Cir. 1998) similarly rejected any notion that Coleman did not apply because the plaintiff in Armstrong had been arrested on a civil warrant.

10

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Evaluation of whether a right is clearly established looks first to Supreme Court and Seventh Circuit precedents (Jacobs v. City of Chicago, 215 F.3d 758, 767 (7th Cir. 2000)). But in the absence of such controlling precedent, all relevant caselaw may be considered to determine whether there was such a clear trend in the caselaw that it was only a matter of time before the right was recognized in our Circuit (id.). In any event, Atkins bears the burden of demonstrating that the constitutional right is clearly established (id. at 766).

At the time that State Officials acted (or failed to act), Atkins had a clearly established right against false imprisonment without due process (see Patton, 822 F.2d at 700-01; see also Coleman, 754 F.2d at 724).[10] That right had been firmly

---

[10] State Officials argue that Coleman "did not hold that the plaintiff's constitutional right was clearly established" (S. Mem. 13). But that misses the point entirely. What matters is not whether the law was clearly established when Coleman was decided, but rather whether it was clearly established (whether via Coleman or through other authority) at the later time when State Officials were called upon to act. Nor was it necessary for Coleman to have announced that it was the vehicle for clear establishment (on that score, see Judge Cudahy's opinion in Coleman, 754 F.2d at 731). While State Officials seek to distinguish Coleman as being solely applicable to cases of criminal arrests, it has already been said that both this Court and other courts applying the Coleman-type analysis have rejected

11

established in our Circuit nearly 20 years before Atkins was arrested and jailed. Just as in Patton, Atkins was detained over his repeated protests of misidentification, and just as in Patton, Atkins spent an extended period of time in jail without state officials performing any kind of investigation into the merits of his misidentification claim.[11]

There can be no question that a reasonable officer would have at least undertaken some verification that Department was detaining the person listed on the warrant--particularly in light of the mismatch between Atkins' and the wanted William Atkins' physical appearances and personal data.[12] And the same reasonable officer would have done so regardless of the nature of the warrant on which Atkins was arrested (see, e.g., Gray, 150 F.3d at 582-83; Cannon, 1 F.3d at 1565).

In a last ditch effort to save their qualified immunity claim, State Officials argue that even if Atkins' constitutional

---

such a narrow reading of Coleman.

[11] Indeed, everything that has been said here on the "clearly established" subject is really buttressed by our Court of Appeals' just-issued decision in Hernandez v. Sheahan, Nos. 04-2246 and 04-2368, 2006 WL 2062120 (7th Cir. July 26). Hernandez, though it rejected a comparable misidentification claim presented under entirely different circumstances, has in the course of doing so directly confirmed this Court's reading and application of both Baker and Armstrong (id. at *3).

[12] Although district court cases are only "evidence of the state of the law" (see Anderson v. Romero, 72 F.3d 518, 525 (7th Cir. 1995)), there are also a number of such cases holding the same way (see, e.g., Johnson, 711 F. Supp. at 1470; Rodriguez v. Roth, 516 F. Supp. 410, 412 (E.D. Pa. 1981)).

right to due process were indeed violated, a determination on immunity is premature because further factual development is called for. As the only basis for that claim, State Officials assert that additional investigation is necessary to find whether State Officials "actually had notice of the misidentification" (S. Mem. 7).

But State Officials' contention in that regard is simply wrong. Any notion that they actually needed to know of the misidentification before Atkins' constitutional right attached or before they could be held liable for having violated that right is totally mistaken. What is relevant for those purposes is not any knowledge that Atkins was not the wanted William Atkins--instead State Officials needed to know only that he was repeatedly claiming misidentification, in the face of which they made not the slightest effort--as easy as it would have been--to ferret out the truth of those assertions while they left him languishing in jail for over a month.

In sum, to recover damages against State Officials in their individual capacity, Atkins must show that they were personally responsible for the deprivation of his constitutional rights (Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)). And that means Atkins must show as to each State Official that he or she either engaged in the conduct causing Atkins' injury or knew about the conduct and approved it, facilitated it, condoned it or

turned a blind eye to it (id.).

For Battaglia, Nance, Reese and Pickard, the FAC more than meets that requirement: It alleges that Atkins protested to each that he had been misidentified but that not one of them investigated his claim (FAC ¶¶41, 50). But the same cannot be said as to Walker. All that the FAC alleges as to him is that he failed to implement a verification protocol despite a continuing problem of misidentification within Department (id. ¶¶50-52). Those allegations certainly leave wiggle room for Walker to claim that he had neither any involvement in Atkins' detention nor any knowledge of his protests of misidentification (and that further investigation would prove as much).

## Conclusion

This Court's obligation to take all reasonable inferences that can be drawn from the pleadings in State Officials' favor translates (1) to granting Atkins' Rule 12(f) motion as it relates to Battaglia, Nance, Reese and Pickard and (2) to denying that motion as it relates to Walker. This Court so orders. Walker's qualified immunity defense will remain open to possible further factual development fleshing out his role in Atkins' detention.

                                               */s/ Milton I. Shadur*
                                               Milton I. Shadur
                                               Senior United States District Judge

Date: July 28, 2006