IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

BRANDIE ATKINS, etc.,            )
                                 )
               Plaintiff,        )
                                 )
     v.                          )    No.  05 C 6109
                                 )
CITY OF CHICAGO, et al.,         )
                                 )
               Defendants.       )

                MEMORANDUM OPINION AND ORDER

     This action has had a long and checkered history (a characterization that this Court has had occasion to repeat more than once). After plaintiffs and their counsel Joseph Longo ("Longo") had dodged a bullet through the action's reincarnation directed by our Court of Appeals in <u>Atkins v. City of Chicago</u>, 547 F.3d 869 (7th Cir. 2008), Longo's filing of a Third Amended Complaint ("TAC") and the ensuing filing of a motion for its dismissal by the remaining defendants--those affiliated with the Illinois Department of Corrections ("Department")--left for resolution what this Court described in the most recent of its many opinions ("Opinion" for simplicity, issued June 23, 2009):

> That leaves for consideration only the TAC's allegations about William having swallowed an earring and then having been kept under observation until he defecated it into what Longo continually refers to as a "green pale." That mistaken spelling may of course be a Freudian slip, for Longo certainly does view the conduct involved as beyond the pale.
>
> In any case, the requirement that William evacuate the earring would scarcely appear to qualify as a constitutional violation, under either an Eighth-Amendment-type standard or any other potentially

applicable criterion. But the parties' memoranda have really not met head on as to whether the conditions imposed on William until he did so (see TAC ¶¶10, 12 and 17-21) impinged on his constitutional rights.

Next, at the June 25 status hearing ordered in the Opinion, this Court ordered that each side provide nothing more than citations to whatever authorities were viewed as supporting their respective positions on the remaining issues. Now both sides have tendered submissions,[1] and the matter is ripe for decision.

For their part, the Department defendants have adduced several citations to unpublished Seventh Circuit opinions--most importantly, two on the principal subject identified in the above-quoted language from the Opinion (Jihad v. Wright, 124 F.3d

---

[1] Defense counsel complied faithfully with this Court's directive, submitting a document that occupied just a few lines more than a page, listing several cases without argument (this Court had expressly stated that it wanted only that, assuring counsel that it would of course read the cases that they cited--as it has done). Regrettably true to form, after having stated "that this Court does not desire a brief with full arguments, but rather, a list of citations," Longo proceeded to disregard (indeed, to flout) that directive--instead he tendered a seven-page filing, the first half page of which needlessly repeated the claims in the TAC as to the assertedly unconstitutional deprivations suffered by William Atkins ("William"), and the next six pages of which (1) cited not only cases responsive to this Court's directive but also cases that addressed issues previously disposed of by this Court in the process of whittling the case down to the few matters remaining for decision, (2) explained Longo's view of the holdings in all of the cases that he cited and (3) quoted at length from one of those cases. Apparently Longo must have chosen his earlier-quoted words carefully--he impermissibly converted this Court's direction for no argument into one for no "full arguments," which he somehow viewed as granting him a license to offer substantial argument as long as it was not "full" (whatever that might mean).

204 (7th Cir. 1997)(table), No. 96-1033, 1997 WL 471345 (7th Cir. Aug. 13) and <u>Stewart v. Wright</u>, 101 F.3d 704 (7th Cir. 1996)(table), No. 96-1486, 1996 WL 665978 (7th Cir. Nov. 14))--and one that addressed in meaningful terms the appropriateness of limitations on an inmate's access to a telephone, a topic adverted to in TAC ¶¶17-18 and 21 (<u>Israel v. Cohn</u>, 6 Fed. App'x 348 (7th Cir. 2001)). All three of those opinions were promulgated under the then-established constraint imposed by our Court of Appeals that precluded their citation as authority, but--more importantly--each of them rejected a claim of constitutional deprivation.

First <u>Stewart</u> and then <u>Jihad</u> expressly upheld the dismissal of complaints that had asserted the unconstitutionality of a "dry-cell" procedure, equivalent to the one to which William was subjected, the goal of which was to provide control over the retrieval of materials that an inmate had ingested or could have ingested.[2] As for <u>Israel</u>, it upheld the dismissal of a complaint that challenged the constitutionality of restrictions on inmate telephone traffic that "are reasonably related to legitimate

---

[2] Those holdings (and William's like treatment) are sharply different from the circumstances described in <u>Kimbrough v. O'Neil</u>, 523 F.2d 1057 (7th Cir. 1975), the case that Longo quotes extensively in his current submission. If Longo were right in calling that case to his aid in the "dry-cell" situation involved here, the <u>Kimbrough</u> case would have led to a different outcome in the <u>Stewart</u>-<u>Jihad</u> matrix parallel to that presented by William's case.

3

penological interests."

What controls here is not of course any affirmative precedential force of those three opinions--under the Court of Appeals' restrictions they have none--but rather the lesson that is taught by their very existence: It clearly cannot be said that the asserted indignities complained of in the TAC violated any "clearly established constitutional rights" of the late William. And none of the cases cited in Longo's current submission really lays a glove on that proposition.[3]

During its just-completed most recent Term, the Supreme Court decided <u>Pearson v. Callahan</u>, 129 S.Ct. 808 (2009), which altered the preexisting approach to qualified immunity considerations: It is no longer necessary to adhere to the two-step analysis mandated by <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), as described in these terms by <u>Pearson</u>, 129 S.Ct. at 815-16:

---

[3] Longo's citations properly lead off with <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). But he then blithely ignores that case's teaching that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment" (<u>id</u>.) and that a charged "prison official must have a 'sufficiently culpable state of mind'" (<u>id</u>.)--"one of 'deliberate indifference' to inmate health or safety" (<u>id</u>.). Instead he adduces a battery of cases that address conduct that is indeed punitive in nature, casting no real light on the implementation of legitimate penological interests by defendants' non-punitive conduct at issue here. Most importantly, as the text reflects, none of those cases even approaches (let alone surmounts) the hurdle posed by the doctrine of qualified immunity.

4

> In <u>Saucier</u>, 533 U.S. 194, 121 S.Ct. 2151, this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S.Ct. 2151. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. <u>Ibid</u>. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. <u>Anderson</u>, <u>supra</u>, at 640, 107 S.Ct. 3034.

Instead a court may turn directly to the second inquiry--and that approach is well exemplified here.

As permitted by <u>Pearson</u>, this Court determines expressly that the conduct of the Department defendants did not violate any clearly established constitutional right possessed by William, so that those defendants are insulated from liability by the doctrine of qualified immunity. Because that potential liability is all that has remained of the claims originally advanced in this lawsuit, it presents the legal equivalent of what T.S. Eliot described in <u>The Waste Land</u>:

> This is the way the world ends.
> Not with a bang but a whimper.[4]

---

[4] [Footnote by this Court] It was a toss-up whether the current situation is best described by the quotation in the text or by this description of the ultimate disappearance of the Cheshire Cat in Lewis Carroll's <u>Alice's Adventures in Wonderland</u> ch. 6:

> [I]t vanished quite slowly, beginning with the end of the tail, and ending with the grin, which remained some time after the rest of it had gone.

5

Both the TAC and this action are dismissed.

```
                          _____
                          Milton I. Shadur
                          Senior United States District Judge
```

Date:  July 14, 2009